UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-23266-CIV-ALTONAGA/Damian

**ANGELA BERNHARDINE**
**GALLO**, *et al.*,

    Plaintiffs,

v.

**CARNIVAL CORPORATION**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Plaintiffs, Angela Bernhardine Gallo and Lisa Antonietta Lieselotte Gallo's Motion to Remand [ECF No. 124], filed on October 6, 2023. Defendant, Carnival Corporation, filed a Response [ECF No. 128], to which Plaintiffs filed a Reply [ECF No. 132]. The Court has carefully reviewed the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted.

**I. BACKGROUND**

This case derives from an action filed in a Texas state court by Plaintiffs against several defendants, all of whom are alleged to have contributed to the death of Basilio Gallo, an Italian citizen.[1] (*See generally* Notice of Removal, Ex. B, Pl.'s Original Pet. ("Pet.") [ECF No. 1-3]; *see also* Mot. Dismiss, Ex. 1, Composite [ECF No. 14-1] 3).[2] Plaintiffs are Gallo's widow and daughter, respectively. (*See* Mot. 6).

---

[1] References to "Gallo" are to the decedent, Basilio Gallo.

[2] Along with its Motion to Dismiss, Defendant submitted the Declaration of John Mitchell, an Officer's Agreement, and a Personal Questionnaire, as a composite exhibit. (*See generally* Composite). The Court refers to pages within the Composite, as it does with all court filings, using the pagination generated by the Case Management/Electronic Case Files system, which appears as a header on the filings.

Gallo worked on Defendant's cruise ships for nearly 40 years (*see* Pet. ¶¶ 40–41), during which he entered into several employment contracts with Defendant (*see* Mot. 7; Resp. 4). In 2009, his final year of employment with Defendant, Gallo signed an employment contract containing an arbitration clause, as well as an integration clause that "supersede[d] any prior contract or terms of employment" between the parties. (*See* Composite 7 (alteration added)). The contract listed "Nassau" as the "Port of Embarkation" (*id.* 8) and was signed by Gallo and a representative of Golden Falcon International SA (*see id.* 7). Contracts from 2006 and 2007 contained "identical" arbitration clauses. (Resp. 4 n.3). In 2020, Gallo was diagnosed with and eventually died from mesothelioma, allegedly attributable to asbestos exposure on cruise ships during his employment with Defendant. (*See* Pet. ¶¶ 40–41).

On December 12, 2022, Plaintiffs — residents of Italy (*see id.* ¶ 4) — filed suit in Texas state court, seeking damages from Defendant, a Panamanian corporation (*see* Composite 6), and several manufacturing and equipment corporations for violations of the Jones Act, 46 U.S.C. section 30104, general maritime law, and Texas state law. (*See generally* Pet.). The case was transferred to a multi-district pre-trial litigation court, also in the Texas state court system. (*See* Aug. 25, 2023 Order [ECF No. 98] 2). Defendant removed the action to the United States District Court for the Southern District of Texas (*see generally* Notice of Removal [ECF No. 1]); after which Defendant filed a Motion to Dismiss and Compel Arbitration [ECF No. 14], and Plaintiffs filed a first Motion to Remand [ECF No. 55].[3]

Subsequently, Plaintiffs' claims against Defendant were severed from the original action (*see* July 6, 2023 Order [ECF No. 97] 1) and transferred here (*see* Aug. 25, 2023 Order 4). The remaining claims were remanded to Texas state court (*see* July 6, 2023 Order 1), and the pending

---

[3] Both motions were fully briefed; relevant to this case, Defendant filed a Response [ECF No. 81] to the Motion to Remand, to which Plaintiffs filed a Reply ("Initial Reply") [ECF No. 84].

motions were denied without prejudice (*see* Aug. 25, 2023 Order 4). After holding a status conference [ECF No. 122], the undersigned gave Plaintiffs until October 6, 2023 to file a renewed motion to remand. (*See* Sept. 26, 2023 Order [ECF No. 123]). The Motion to Remand is now ripe for decision. (*See generally* Mot.; Resp., Reply).

The issue of whether the Court has jurisdiction over this case turns on arbitration clauses contained in employment agreements dating from between 2006 and 2009. (*See* Mot. 7; Resp. 4 & 4 n.3). Plaintiffs argue the agreements do not encompass their claims (*see* Mot. 9–19); they say even if they do, the agreements are inapplicable by their own terms (*see id.* 19–22); and, further, even if applicable, they are unenforceable and unconscionable (*see id.* 22–25). Defendant rejects each argument, insisting the agreements are sufficient to confer jurisdiction. (*See generally* Resp.).

## II. LEGAL STANDARDS

Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a) (alteration added). "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. [section] 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. [section] 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997) (alterations added; citation omitted).

The second type of jurisdiction — federal question jurisdiction — exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Relevant to this case, the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. (the "Convention") "requires courts in signatory nations to give effect to private international arbitration agreements

3

and to recognize and enforce arbitral awards entered in other contracting states." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1261 (11th Cir. 2011) (citation omitted). The United States is a signatory to the Convention and enforces it through the Federal Arbitration Act ("FAA"), 9 U.S.C. sections 201–208, which "'deem[s] [actions under the Convention] to arise under the laws and treaties of the United States.'" *Ruiz v. Carnival Corp.*, 754 F. Supp. 2d 1328, 1330 (S.D. Fla. 2010 (alterations added; quoting 9 U.S.C. § 203)).

The FAA provides for removal when "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention[.]" 9 U.S.C. § 205 (alterations added). An agreement "falls under the Convention" when it arises from a commercial relationship involving foreign parties or states. *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323 (11th Cir. 2018) (quoting 9 U.S.C. § 202), *rev'd on other grounds sub. nom GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020). The "relates to" requirement is "broad" but "not boundless[.]" *Id.* (alteration added; quotation marks omitted). It is met when the agreement and dispute are "sufficiently related . . . such that [the agreement] conceivably affects the outcome of the case." *Id.* (alterations added).

"On a motion to remand, the removing party bears the burden of showing the existence of federal jurisdiction." *Sheinberg v. Princess Cruise Lines, Ltd.*, 269 F. Supp. 2d 1349, 1351 (S.D. Fla. 2003) (citation omitted). Generally, "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, [but] the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (alteration added; quotation marks and citation omitted).

## III.  DISCUSSION

The Court begins with whether arbitration agreements from the tail end of Gallo's employment are "sufficiently related to" Plaintiffs' claims, which are based on his employment during previous years not covered by such agreements. (*See* Mot. 16–17); *Outokumpu*, 902 F.3d at 1323.  The Court concludes that they are not.  The Court then turns to whether, as Defendant argues, those agreements nonetheless require arbitration for claims arising under Gallo's previous employment contracts.  (*See* Resp. 6–9).  Because neither Defendant nor Plaintiffs provide enough information for the Court to determine which state's contract law should govern its interpretation of the agreements, the Court concludes it cannot assure itself of proper federal jurisdiction.  The case is thus remanded, and the remaining arguments are not reached.  The Court explains.

There is no dispute Gallo entered into employment contracts requiring arbitration of "[a]ny and all disputes arising out of or in connection with [his employment] [a]greement[.]" (Composite 7 (alterations added)).  Indeed, Plaintiffs concede these agreements "fall under the Convention." (Mot. 9 (quotation marks omitted)).  They deny, however, that any agreement to arbitrate "relates to" their claims in this case, emphasizing that the agreements apply to specific dates of service that are irrelevant to Plaintiffs' claims.  (*Id.* 9–10, 16–18).

On their own, the agreements' limited durations are not enough to prevent removal.  The arbitration clauses broadly cover "[a]ny and all disputes arising out of or in connection with" the named voyage; this would, on its face, include illness arising from exposures during the voyage. (Composite 7 (alteration added)).  If jurisdiction exists by virtue of the agreements, the issue of whether the scope of arbitration includes exposures arising from prior voyages would be for either the Court or an arbitrator to resolve.  (*See id.* (indicating that all questions related to agreement should be resolved by arbitration)); *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 929–30 (11th Cir.

2018) (explaining that parties can submit questions of arbitrability to an arbitrator, provided there is "clear and unmistakable evidence" of intent do so (quotation marks and citation omitted)).

The Court need not take undertake that analysis here, however, because Plaintiffs expressly disclaim the right to seek recovery for any exposures that occurred during years in which an arbitration agreement existed. (*See* Mot. 16–17; Initial Reply 16). As Plaintiffs note, courts have accepted post-removal disclaimers of recovery that would otherwise trigger federal jurisdiction. (*See* Reply 8). Specifically, a several courts have remanded cases where plaintiffs alleged the development of mesothelioma from asbestos exposures during both private and federal employment; when plaintiffs have disclaimed recovery on the basis of exposures during federal service, courts have concluded no federal defense was possible and, therefore, no federal question jurisdiction existed. *See, e.g.*, *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1362–65 (S.D. Fla. 2016) (collecting cases); *Hayden v. 3M Co.*, No. 15-2275-Civ, 2015 WL 4730741, at *3–4 (E.D. La. Aug. 10, 2015) (permitting disclaimer "disavow[ing] the pursuit of damages that may have resulted from asbestos exposure during" military service) (alteration added)); *Joyner v. A.C. & R. Insulation Co.*, No. 12-2294-Civ, 2013 WL 2460537, at *4–5 (D. Md. June 6, 2013) (distinguishing between impermissible jurisdictional disclaimers and permissible claim disclaimers).

The Court is persuaded Plaintiffs can similarly disclaim the right to recover for Gallo's exposures during years when an arbitration agreement would apply, thereby preventing such agreements from forming the basis for federal question jurisdiction. *Cf. Azevedo v. Carnival Corp.*, No. 08-20518-Civ, 2008 WL 2261195, at *6 (S.D. Fla. May 30, 2008) ("As the 'master of her complaint,' [the plaintiff] has purposely chosen to forgo any available claims that arose after the [arbitration agreement] became effective. Whether she did so to avoid arbitration is irrelevant."

(alterations added)).  With the disclaimer in place, the arbitration agreements do not "relate to" the dispute, as arbitrating Defendant's liability for injuries that occurred during years in which Plaintiffs are not seeking to recover could not "conceivably affect[] the outcome" of Plaintiffs' actual claims, which arise from an entirely separate set of exposures.  *Outokumpu*, 902 F.3d at 1323 (alteration added; emphasis omitted).[4]  Defendant has no right to arbitrate "claims that simply do not exist."  *Batchelor*, 185 F. Supp. 3d at 1364–65 (quotation marks and citations omitted).

Separately, Defendant argues arbitration agreements in fact exist for all years of Gallo's employment because the final employment contract's integration clause must be read to impose the arbitration requirement on all previous contracts.  (*See* Mot. 10–19; Resp. 6–9; Reply 9–10).  When it comes to determining whether an arbitration agreement exists, "[t]he Supreme Court has made clear that th[e] inquiry is a matter of state contract law."  *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017) (alterations added; citations omitted).

Here, interpretation of the agreement is necessarily informed by state law principles of contract interpretation, which vary from jurisdiction to jurisdiction.  Yet, the parties have not provided an adequate choice-of-law analysis.  In their briefing, they cite simultaneously to Texas state law, Fifth Circuit case law, and, to a lesser extent, Eleventh Circuit case law.  (*See generally* Mot.; Resp.; Reply).  Plaintiffs maintain "the applicable law is that of Texas, not Florida, since the

---

[4] Defendant's practical concerns about the difficulty of separating out exposures over time may be relevant at trial, but they do not defeat Plaintiffs' disclaimer.  (*See* Resp. 8; Reply 8–9).  Courts allow disclaimers even when they would require juries to distinguish between exposures across a plaintiff's employment history.  *See, e.g.*, *Batchelor*, 185 F. Supp. 3d at 1364 (upholding disclaimer of exposures from a period of military service); *Hayden*, 2015 WL 4730741, at *3–4 (same); *Joyner*, 2013 WL 2460537, at *5 (concluding jury could apportion damages between defendants and, having determined the extent attributable to a specific piece of equipment, subtract that amount from the damages award in light of the plaintiff's disclaimer).  Certainly, if Plaintiffs' conduct in state court contradicts their disclaimer, Defendant can again attempt removal.  *See Phillips v. Asbestos Corp. Ltd.*, No. 13-5655-Civ, 2014 WL 794051, at *2 (N.D. Cal. Feb. 26, 2014).

case was brought there and would be tried there [on remand.]" (Reply 9 (alteration added)). But the choice-of-law analysis is not so simple.

Certainly, the Court can conduct a choice-of-law analysis *sua sponte* and apply the law it determines should govern. *See, e.g.*, *Worldwide Distribs., Inc. v. Maven Med, Inc.*, No. 22-23635-Civ, 2023 WL 4303847, at *14 (S.D. Fla. June 15, 2023), *report and recommendation adopted*, 2023 WL 4295421 (S.D. Fla. June 30, 2023). But the parties have not provided enough information for the Court to do so. Where jurisdiction is alleged to arise under a federal statute, courts apply the choice-of-law rules found in federal common law, which in turn follow the Restatement (Second) Conflict of Laws. *See Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342, 1345 (11th Cir. 2013).[5] The Restatement instructs courts to first consider an express choice of law and, failing that, the laws of the state with the most significant relationship to the contract. *See* Restatement (Second) of Conflict of Laws §§ 186–88 (Am. L. Inst. 1981).

Conveniently, the employment contract in this case contains an express choice of law. (*See* Composite 7). Less conveniently, the parties do not give the Court enough information to enforce it. The 2009 contract provided to the Court states that it — and disputes arising under it — are "governed by . . . the laws of the flag of the vessel on which [Gallo] is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder." (*Id.* (alterations added)). In its Motion to Dismiss and Compel Arbitration — although not in its

---

[5] In "a federal question case where substantive law is to some extent applicable, [a] federal court [is] not bound by the forum state's choice of law rules[.]" *Fed. Deposit Ins. Corp. v. Lattimore Land Corp.*, 656 F.2d 139, 148 n.16 (5th Cir. 1981) (alterations added; quotation marks and citations omitted). In this case, however, the outcome is the same under federal common law and Texas state law, which would apply here. *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013) (explaining that when a case is transferred under 28 U.S.C. section 1404, "the state laws applicable in the original court also apply in the transferee court"). Both follow the Restatement. *See Chau Kieu Nguyen*, 709 F.3d at 1345; *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008); *see also Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 749 (5th Cir. 1981) (declining to review choice of law analysis where federal and state rules led to the same result).

briefing on this Motion — Defendant asserted "the governing law for all claims asserted against [it] . . . is the law of the Bahamas" because the final cruise ship on which Gallo worked flew under that nation's flag. (Mot. Dismiss 13 (alterations added)). Thus, Defendant argues the integration clause makes it so any cause of action from any previous employment contract will be governed by Bahamian law. (*See* Resp. 7). Plaintiffs see things differently, arguing Defendant's reading would have the absurd effect of "suddenly, retroactively incorporating into the agreement the law of the flags of dozens of other vessels[.]" (Mot. 16 (alteration added)).

The Court need not weigh in on the correctness of any of these statements because they are beside the point. The contract expressly focuses on "the vessel on which [Gallo was] assigned *at the time the cause of action accrue*[*d*]." (Composite 7 (alterations and emphasis added)). Plaintiffs maintain their cause of action accrued "in 2020, long after [Gallo] was assigned to any vessel at all." (Mot. 19 (alteration added)). Defendant does not dispute Plaintiffs' assertion that Gallo's cause of action accrued after his time on a flagged vessel, arguing only that the agreement applies even if a cause of action accrues after the conclusion of his employment. (*See* Resp. 9–10). Clearly, the parties have not stipulated to a legal theory or version of events that would allow the Court to enforce the agreement's choice-of-law provision.

Similarly, the record also does not provide enough information for the Court to determine the state with the most significant relationship to the litigation. *See* Restatement (Second) of Conflict of Laws § 188 (describing factors to be considered when determining "most significant relationship"). The employment agreement does not indicate where it was signed. (*See* Composite 6–9). It lists the "Port of Embarkation" as "Nassau" (presumably, in the Bahamas) but does not state where the contract will be performed. (*Id.* 8). Gallo was an Italian resident (*see* Composite 3), as are Plaintiffs (*see* Pet. ¶ 4).

Indeed, this case was transferred precisely because the Texas district court concluded Plaintiffs had no "particular interest" in a Texas forum; instead, the court determined *this* District — where Defendant, a Panamanian corporation (*see* Composite 6), has its headquarters — has "a greater interest in adjudicating" the case. (Aug. 25, 2023 Order 3). In short, following the facts of this case has taken the Court around the world, and the parties do not explain why the laws of any particular state should govern. (*See generally* Mot.; Resp.; Reply).

"It is not incumbent upon the Court to do [] research for the parties or to make assumptions about [factual questions]." *James v. Marshall*, No. 22-cv-241, 2022 WL 2809857, at *9 (S.D. Ala. July 18, 2022) (alterations added). In this case, the Court does not even have enough information to reach a conclusion on the parties' behalf. And if the Court were to somehow conclude that the law of a state other than Texas applies, the problem is compounded; the parties have not briefed any law from another state or nation. *Cf. Mut. Servs. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004) ("The district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so."); *Solution Z v. Alma Lasers, Inc.*, No. 11-21396-Civ, 2013 WL 12246356, at *4 (S.D. Fla. Jan. 22, 2013) (declining to consider arguments where "the Parties failed to brief the applicable law"); *see also Spencer v. Texaco, Inc.*, No. 96-0228, 1996 WL 363540, at *2 (E.D. La. June 28, 1996) ("It is not the court's job to divine the applicable law for the parties.").

All parties have contributed to this conundrum, but it is Defendant who ultimately bears the burden of showing jurisdiction exists. Given that it does not provide enough information for the Court to interpret the arbitration agreement it asserts forms the basis of federal jurisdiction, the Court concludes this burden is not met.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiffs, Angela Bernhardine Gallo and Lisa Antonietta Lieselotte Gallo's Motion to Remand **[ECF No. 124]** is **GRANTED**. The case is **REMANDED** to the Eleventh District Court of Harris County, Texas.

**DONE AND ORDERED** in Miami, Florida, this 12th day of December, 2023.

*[signature]*
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record